### UNITED STATES v. VAN LEUVEN (fifteen cases).

(District Court, N. D. Iowa, E. D.    June 4, 1894.)

Nos. 3,494, 3,495, 3,498, 3,499, 3,501, 3,502, 3,504, 3,507, 3,520, and 3,526–3,531.

1. EXCESSIVE FEES IN PENSION CASES—INDICTMENT—REQUISITES.
    In an indictment under the act of July 4, 1884, § 3, for demanding and receiving compensation for prosecuting a pension claim before such claim is allowed, it is unnecessary to aver that the amount so received was in excess of the sum legally chargeable, or to negative the existence of a contract in regard to the fees.

2. SAME.
    An indictment for violating the statute regulating fees for prosecuting pension and bounty land claims (Act July 4, 1884) need not aver that the applicant for a pension had been in the military or naval service of the United States.

3. SAME.
    An indictment charging the receipt of a fee exceeding $10 for prosecuting an application for an increase of pension because of an increase of disability need not negative the existence of a contract; for under the act of July 4, 1884, it was unlawful to receive, even by contract, a fee exceeding $10.

4. CONSTITUTIONAL LAW—REGULATION OF CONTRACTS—FEES IN PENSION CASES.
    Congress has constitutional power to regulate the amounts which claimants under the pension laws may contract to pay to their solicitors, even though both parties are citizens of the same state.

These were indictments against George M. Van Leuven for demanding or accepting excessive fees for prosecuting pension claims, contrary to the act of July 4, 1884. Defendant demurred to the various indictments.

Cato Sells, U. S. Atty., and M. D. O'Connell, for the United States. John Day Smith, for defendant.

SHIRAS, District Judge. It will probably aid in arriving at a clear understanding of the questions presented by the demurrers to the indictments to briefly state the provisions of the statutes regulating the matter of the fees legally chargeable by attorneys acting for persons applying for pensions.

By section 3 of the act of July 4, 1884 (23 Stat. 98), section 4785 of the Revised Statutes is re-enacted and amended so as to read as follows:

"No agent or attorney or other person shall demand or receive any other compensation for his services in prosecuting a claim for pension or bounty land, than such as the commissioner of pensions shall direct to be paid to him, not exceeding twenty-five dollars; nor shall such agent, attorney or other person demand or receive such compensation in whole or in part, until such pension or bounty land claim shall be allowed, * * *."

By section 4 of this act, section 4786 of the Revised Statutes is amended; and, as amended, it provides for the filing with the commissioner of pensions of duplicate articles of agreement, setting forth any contract existing between the attorney and claimant in regard to the fee to be paid; it being provided that if no agreement is filed with the commissioner the fee to be paid shall be

$10, and no more. And by section 6 it is declared that "the commissioner shall have power subject to review by the secretary, to reject or refuse to recognize any contract for fees herein provided for, whenever it shall be made to appear that any undue advantage has been taken of the claimant in respect to such contract;" it being also further provided that "any agent or attorney or other person instrumental in prosecuting any claims for pension or bounty land, who shall directly or indirectly contract for, demand or receive or retain any greater compensation for his services or instrumentality, in prosecuting a claim for pension or bounty land than is herein provided, or for payment thereof at any other time or in any other manner than is herein provided, *  *  * shall be deemed guilty of a misdemeanor." It is also provided in this act that "no greater fee than ten dollars shall be demanded, received or allowed in any claim for pension or bounty land granted by special act of congress, nor in any claim for increase of pension on account of the increase of the disability for which the pension has been allowed." By the provisions of the act of March 3, 1891 (26 Stat. 1081), the compensation for services rendered in securing an increase of pension on account of the increase of disability for which the original pension was granted is reduced to two dollars; it being, however, provided "that the foregoing provisions in relation to fees of agents or attorneys shall not apply to any case now pending where there is an existing lawful contract express or implied."

Thus we find that for the protection of pension claimants the statutes of the United States regulate the matter of the fees to be paid to agents, attorneys, and others instrumental in prosecuting claims, in two important particulars: First, as to the amount legally chargeable; second, as to the time of payment. Upon the question of the amount, the law is, and has been since the adoption of the act of July 4, 1884, that the agent or attorney shall be entitled to such compensation as the commissioner shall direct to be paid him, not exceeding $25; that the agent or attorney, by a contract fairly entered into, and duly executed in the presence of, and certified by, some officer competent to administer oaths, may agree with the claimant as to the fee to be paid him, not exceeding the sum of $25, and upon this agreement being filed with the commissioner the sum agreed upon may be paid by the commissioner, in accordance with the provisions of sections 4768 and 4769 of the Revised Statutes; that if no agreement thus executed is filed with the commissioner the fee shall be $10, and no more, and since the adoption of the act of March 3, 1891, the fee for service in procuring an increase of pension for an increase of the original disability is the sum of $2, and no more. Therefore, any agent, attorney, or other person who, since the 4th day of July, 1884, has demanded or received for services in and about securing an original pension, or increase thereof, for another, a sum in excess of $25, or who since that date has demanded or received for services in and about securing an original pension, or increase thereof, for another, a sum in excess of $10, unless the same has

been demanded or received in accordance with a contract executed and filed with the commissioner of pensions as provided for in section 4. of the act of July 4, 1884, or who since that date, and previous to March 3, 1891, has demanded or received for services in and about securing an increase of pension for another, on account of the increase of the disability for which the pension was originally allowed, a sum in excess of $10, or who, since the adoption of the act of March 3, 1891, for services of the character last mentioned, has demanded or received a sum in excess of $2 for such service, has thereby violated the provisions of the law, has been guilty of a misdemeanor, and is liable to the punishment by the statute provided.

Upon the question of the terms of payment of legal fees the statutes are explicit. By the provisions of section 3 of the act of July 4, 1884, amending section 4785 of the Revised Statutes, it is declared that the agent, attorney, or other person must not demand or receive compensation, in whole or in part, for the services by him rendered, until the pension shall be allowed; and by section 4 of the act it is made a misdemeanor to contract for, demand, or receive payment of the compensation at any other time or in any other manner than that provided for in the other portions of the act. Thus an agent, attorney, or other person rendering services in aid of the procurement of a pension, or the increase thereof, may be guilty of a misdemeanor by directly or indirectly contracting for, demanding, receiving, or retaining a compensation in excess of the legal amount, or he may be guilty of a misdemeanor by contracting for, demanding, or receiving his compensation before the allowance of the pension, or in a manner other than that provided in the statute.

Indictments to the number of 13 have been found against the defendant, George M. Van Leuven, charging him with violation of the statutes, in that in some instances he demanded and received payment of compensation for services rendered, as agent or attorney, in procuring pensions, or an increase thereof, before the pension or increase was allowed, and in other instances he demanded and received sums in excess of the legal amount.

To these indictments general demurrers are interposed, and in support thereof it is urged that the several indictments are lacking in the averment of the facts essential to sustain a conviction. Touching indictments in cases Nos. 3,494, 3,495, 3,498, 3,499, 3,501, 3,502, first count 3,504, 3,507, 3,520, 3,526, 3,527, 3,528, 3,529, 3,530, and 3,531, which charge the receiving payment of compensation before the allowance of the pension touching which the services were rendered, I think all the necessary facts are properly and sufficiently set forth, and that the defendant is thereby fully informed of the charge which he is required to meet. In regard to this class of cases, it is not necessary to aver or show that the amount received by the defendant is in excess of the amount which might be lawfully demanded or received by the defendant, for the charge is not that an unlawful amount was received, but that the amount, whether excessive or not, was received at an unlawful time. The

fact, therefore, of the existence of a contract in regard to the fees to be paid, is wholly immaterial on the question of the time of payment. It is not necessary, therefore, to negative the existence of a contract, in order to make out a charge of receiving payment at an unlawful time, because the parties cannot, by contract, make lawful, payments made to the agent or attorney before the allowance of the pension in the given case.

In some of these indictments, it is not averred that the party on whose behalf application for a pension was made had been in the military or naval service of the United States; and exception is taken thereto on the ground that, to constitute a violation of the statute, it must be averred and be proven that the applicant had been in fact in the military or naval service. The statute does not so provide in express terms, nor can such a requirement be implied from the language of the statute, as applied to the subject-matter. The protection of the statute is thrown about all applicants for pensions, even though they may fail in proving that they had been in the military or naval service, within the meaning of the pension laws. The sections of the statute restricting the fees legally demandable by agents or attorneys have a double purpose,— the one being the protection of the applicant; the other, the protection of the government against fraudulent claims, which might be greatly multiplied if no restrictions in regard to the amount or time of payment of fees were provided. It would greatly narrow the real purpose of the statute if we should read into the same the restriction that its provisions are applicable only in cases wherein a soldier or sailor who had actually been in service was the applicant. Whenever an agent or attorney undertakes to render service in aid of an application for a pension, or for an increase thereof, he then comes within the purview of the statute, and must act within its provisions.

The second count in indictment 3,502 and indictments 3,504 and 3,507 are based upon the charge of receiving excessive fees for services rendered in connection with applications for an increase of pension by reason of an increase of the disability for which the original pension was granted. The sums charged to have been received in each of the cases named in these indictments exceed in each instance the sum of $10. These payments could not, under any circumstances, have been legally contracted for. It is charged in each case that the payment was received at dates subsequent to March 3, 1891; and hence it is argued that it should be shown whether there was or was not a contract in existence in regard to the fees, in order to show whether the proviso in the act of March 3, 1891, is applicable or not. That proviso is to the effect that the reduction of the fee from ten to two dollars for services in connection with an increase of pension shall not apply to any case pending, wherein there is an existing, lawful contract, express or implied. If the law were such that at the time the payments in question were made the parties might have lawfully contracted for the payment of the sums received, then it might well be that the indictments should contain an averment showing the nonex-

istence of such contract; but the law is now, and was so at the date of the payments in question, that under no circumstances could the parties, by contract, lawfully agree to payment in excess of $10. The averments in the indictments are sufficient, without any statements negativing the existence of contracts, to show conclusively that the reception of the sums charged to have been received by the defendant was in each case a violation of the statute, and that is all that is necessary.

The next contention on behalf of the defendant is that these acts of congress for the regulation of contracts in regard to the fees to be paid for services in connection with pension matters between the parties—they being citizens of the same state—are unconstitutional, the argument being that the United States government is one possessing only enumerated powers, all others being reserved to the states; that the right to restrict the general power to contract possessed by the citizen belongs to the state; that the money paid by the claimants to the defendant was part of their own money, and not part of any pension payment received from the United States, and hence the claimants could pay it, if they so desired, to the agent or attorney. It cannot be questioned that the general subject of the payment of pensions to persons who are, or have been, in the service of the United States is one within the powers conferred upon the federal government. Of necessity, the regulation of the mode to be followed in applying for a pension belongs to the government of the United States. The pensioners are deemed to be recipients of the bounty of the general government, and the extent to which congress has gone in legislating for the protection of pensioners is fully set forth by Mr. Justice Clifford, speaking for the supreme court, in U. S. v. Hall, 98 U. S. 343, wherein it was held that congress had the power to provide for the punishment of a guardian who should embezzle pension money paid to him for his wards. Persons acting as agents or attorneys in regard to pension claims are governed by strict rules adopted by the pension office, and when they seek the privilege of practicing in that office they become subject to all the statutory and office rules regulating the business they engage in. It has never been doubted that congress can regulate the fees demandable by the clerks or marshals of the courts of the United States for services rendered the individual citizen in the prosecution of claims in the courts, although such claims may be wholly private in their nature, and not be part of the public bounty, as in the case with pensions. The right of congress to regulate the amounts demandable of pensioners or pension claimants for services rendered in connection with the procurement of pensions, or an increase thereof, has two substantial grounds of support, to wit, the necessity of protecting the citizens who are seeking the bounty of government from all imposition and extortion, and the necessity of protecting the government against false, fictitious, or greatly magnified claims, worked up by agents who have contracted for, or expect to get, a large share of the claim that may be allowed. The right of congress to legislate on this subject seems to me clear, beyond question.

Finding no substantial merit in any of the objections urged against the validity of the indictments in the cases now under consideration, the demurrers thereto are overruled.