In re SIXTO CHARNECO MURILLO, querellado.

Núm. 70.—*Sometido:* Junio 14, 1948. *Resuelto:* Junio 22, 1948.

*Enrique Báez García* y *Jorge L. Córdova,* abogados del querellado; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo.

*Per curiam:*

El Fiscal ha radicado procedimiento de *disbarment* contra el abogado Sixto Charneco Murillo, admitido por este

Tribunal a practicar la profesión ante las cortes insulares y a ejercer el notariado. La querella lee en parte como sigue:

"*Quinto:* Que las irregularidades y violaciones a la Ley de Registro de Affidavits incurridas por el querellado, Sixto Charneco Murillo, son como sigue:

"(*a*) Que el expresado Sixto Charneco Murillo, actuó irregularmente y en violación de la Ley Notarial al proceder a corregir sus Indices Notariales correspondientes a la semana comprendida entre los días del 7 al 14 de junio del 1943, y del 14 al 21 de junio del mismo año, según comunicación dirigida al Juez de la Corte de Distrito de Mayagüez, donde ejerce su profesión el querellado, fechada el día 28 de diciembre del 1943, procediendo a enviar un índice corregido sin la previa autorización del referido Tribunal, dando por aprobadas las enmiendas por él sugeridas sin que posteriormente hiciera gestión alguna para conseguir la aprobación de las enmiendas por el Juez de dicho Tribunal.

"(*b*) Que el notario, Sixto Charneco Murillo, en violación de la sección 5ta. de la Ley sobre Registro de Affidavits, en relación con la sección 26 de la Ley Notarial (Estatutos Revisados, edición del 1941, páginas 640 y 643), autorizó al affidavit relacionado con una declaración jurada llamada 'Application for Amendment Permit under the Federal Alcohol Emergency Act', otorgado el día 8 de junio de 1943, sin que informase dicho affidavit en sus Indices Notariales correspondientes a la semana comprendida entre el día 7 al 17 de junio de 1943, y sin que llevase a su libro de affidavits el referido juramento, dando con ello motivo a que no pudiese claramente determinarse si las firmas Víctor M. Ramírez, Arcadio Ramírez Cuerda y Daniel Ramírez, fueron estampadas en su inmediata presencia a la fecha en que se presentó el juramento, o sea, el día 8 de junio de 1943.

"*Sexto:* Que las irregularidades y violaciones de la Ley de Registro de Poderes incurridas por el querellado, Sixto Charneco Murillo, son como sigue:

"(*a*) Que el Notario Sixto Charneco Murillo, en violación de la Ley sobre Registro de Poderes, (Ley número 62 del 1937), otorgó la escritura número 81 de fecha 3 de junio del 1943 sobre Poder Amplio, otorgada en Mayagüez, Puerto Rico, por Víctor M. Ramírez, la cual no informó al Secretario de este Honorable Tribunal Supremo.

"(b) Que el Notario, Sixto Charneco Murillo, otorgó el día 8 de junio de 1943, la escritura de Poder número 85 por Víctor M. Ramírez, y remitió el Informe sobre la misma al Sr. Secretario del Tribunal Supremo el día 18 de junio de 1943, o sea, después de haber transcurrido con exceso las cuarenta y ocho (48) horas de su otorgamiento.

"(c) Que el Notario, Sixto Charneco Murillo, otorgó el día 9 de junio de 1943 la escritura de Poder número 88 por Víctor M. Ramírez y en violación de la Ley 62 del 1937, remitió el Informe sobre la misma al Secretario de este Honorable Tribunal el día 18 de junio de 1943, o sea, después de haber transcurrido en exceso las cuarenta y ocho (48) horas de su otorgamiento.

"*Séptimo:* Que las irregularidades y violaciones a la Ley Notarial cometidas por el querellado, Sixto Charneco Murillo, son como sigue:

"(a) Que en el caso Civil R–5383, ante la Corte de Distrito de Mayagüez de Arcadio Ramírez Cuerda v. Víctor M. Ramírez y Daniel Ramírez, el Lcdo. Juan Enrique Géigel, en representación de los demandados, radicó una moción jurada, con fecha 13 de diciembre de 1945, solicitando que se citara al querellado, Sixto Charneco Murillo, para que compareciera ante dicho Tribunal a declarar, trayendo consigo el primer tomo del protocolo de dicho Notario correspondiente al año 1943, donde aparecía la escritura número 85, otorgada por Víctor M. Ramírez a favor de Arcadio Ramírez, alegándose en dicha moción que la referida escritura número 85 había sido alterada. Que la Corte ordenó la citación del querellado, y éste no pudo comparecer en la fecha señalada por encontrarse fuera de la ciudad de Mayagüez, pero finalmente fué localizado y compareció a Corte trayendo consigo el primer tomo del protocolo correspondiente al año 1943. Que a la petición del abogado sobre examen de dicha escritura, la Corte no accedió (véase páginas 211 y 427 de la Transcripción de la Evidencia, Segunda Pieza). Que el Lcdo. Palés Matos en representación del demandante, presentó en evidencia la escritura de Poder número 88 y pidió a la Corte que se ordenara al perito, Sr. Torres Orama, que practicara un examen de la misma (página 216 de la Transcripción de la Evidencia, Segunda Pieza), y la Corte así lo ordenó. Examinadas varias escrituras de dicho protocolo, el perito Sr. Torres Orama, de la División de Huellas Digitales y Documentos Dudosos de la Policía Insular, testificó que la escritura número 88 daba señales de haber sido desprendida previamente, porque donde estaba pegada al protocolo era

de un material distinto al de la escritura (página 473 de la Transcripción de la Evidencia, Segunda Pieza). Que posteriormente a la vista de este caso ante la Corte de Distrito de Mayagüez, el ex-Fiscal Auxiliar de este Honorable Tribunal, Ledo. Joaquín Correa Suárez, citó al querellado para que compareciera a su oficina trayendo consigo el primer tomo del protocolo del año 1943 donde aparecían las escrituras números 85 y 88, y el Notario compareció a dicha citación, pero no trajo consigo el primer tomo del protocolo correspondiente al año 1943, porque, según alegó en informe rendido al Juez de Distrito de Mayagüez, su oficina le había sido escalada, desapareciendo únicamente el referido tomo del protocolo solicitado.

"Que el querellado ha sido negligente y descuidado en la custodia del referido protocolo, dando lugar a que se desconozca el paradero de dicho protocolo el que contiene las escrituras del número 1 al número 120.

"*Octavo:* Que el notario, Sixto Charneco Murillo, alteró el primer tomo de su protocolo notarial correspondiente al año 1943, el que contenía las escrituras del 1 al 120, ordenando al encuadernador José Miguel Pinto, que extrajera del mismo los siguientes documentos y partes de otros:

"1. La escritura número 49, otorgada en 15 de abril de 1943.

"2. Las dos primeras páginas de la escritura número 88, otorgada el 9 de junio de 1943 sobre Poder General, otorgada por Víctor M. Ramírez.

"3. Las dos primeras páginas de la escritura número 85, sobre Poder otorgada en la ciudad de Mayagüez el 8 de junio de 1943.

"4. Dos páginas de la escritura número 86 otorgada en la ciudad de Mayagüez el 9 de junio de 1943.

"5. Las primeras cuatro páginas de la escritura número 43 otorgada en la ciudad de Mayagüez el 9 de abril de 1943.

"6. El folio 129 de una escritura otorgada por una persona de apellido Bonilla, sobre una escritura de Compra Venta.

"*Noveno:* Que el referido notario, Sixto Charneco Murillo, al llevar el primer tomo de su protocolo correspondiente al año 1943, ante el encuadernador José M. Pinto, le ordenó que sacara determinado número de folios que constituían las escrituras originales de dicho tomo, y le llevó varios pliegos escritos en papel notarial para que colocara los referidos documentos en el sitio en que estaban los folios que fueron arrancados por el encuadernador, a su ruego, lo que realizó el encuadernador a indicaciones del referido notario.''

Charneco ha radicado una contestación enmendada que reza en parte así:

"1. Que admite los hechos alegados en la querella.

"2. Que cometió las faltas a que se refiere la querella, en algunos casos por descuido o negligencia, y en otros por la debilidad de complacer al cliente, sin pasar por su mente ni informársele que sus actos pudieran perjudicar a persona alguna.

"En virtud de lo expuesto, el querellado suplica a este Honorable Tribunal Supremo resuelva el caso como mejor entienda que proceda resolverse en justicia, y concediendo al querellado el mayor grado de clemencia que estime procedente."

Es encomiable la actuación del querellado al admitir los hechos que se le imputan. Sin embargo, de su propia faz, los cargos son de tal naturaleza que no podemos hacer otra cosa que desaforarlo.

*Se dictará sentencia desaforando al querellado y eliminando su nombre de los libros registros de abogados y notarios de la isla.*

El Juez Asociado Sr. De Jesús no intervino.